May I reserve three minutes for rebuttal? May I please the court? I'd like to begin by addressing issues number two and five in our brief. Issue two deals with the court's instruction number twelve, which defines the second element of the section 242 offense, and that is deprivation of the constitutional right to be free from unreasonable seizures. And issue five deals with court's instruction number fifteen, the definition which defines willfulness. With respect to instruction twelve, this case implicates the location of the line that Peyton v. New York draws in situations involving warrantless entries into homes. And this case shows that that line is flexible. Instruction twelve is prejudicial for several reasons. First of all, the jury was not instructed on the whole law of arrest because this instruction was based solely on the Peyton case, although the evidence supported an instruction based on Santana v. United States. Another reason that the instruction is prejudicial is that it did not inform the jury about Peyton's presumption that a warrantless arrest is unreasonable can be rebutted. And the last and perhaps most prejudicial aspect of this instruction is that it usurped the jury's fact-finding role to decide whether Mr. Bays was standing in the doorway, a public place, or was inside his home when the arrest occurred. In other words, the instruction prevented the jury from deciding where the Peyton-Santana line is drawn and whether the case is controlled by Peyton or Santana. In arguing about the instructions, counsel pointed out that the arrest was not illegal because Mr. Bays was standing in the doorway at the time and the jury should be instructed or allowed to decide where his location was at the time of arrest because that's a question of fact that was directly related to the validity of this arrest. In instruction 12, the court told the jury that arrests that occur in someone's home are presumed unreasonable unless one of several conditions are true. And the court also instructed that the jury could find that Mr. Corder arrested Mr. Bays in his home without a warrant. If it found that he arrested Mr. Bays in his home without a warrant, without the warrant, without consent, and in the absence of exigent circumstances, then they could presume that the arrest was unreasonable. But defense counsel wanted an instruction that was consistent with the Santana case and counsel proposed an instruction that said that the doorway to one's home is a public place where no one has a reasonable expectation of privacy and they are subject to warrantless arrests. Now, in the course of the trial, the court recognized that Payton and Santana presented competing case law and the judge said that that competing case law would be hashed out in the instructions. But the fact of the matter is that it was not. During the discussion about instructions, the judge took the position that Santana was factually different from the case here because in Santana, the defendant had some evidence in her hand, she went back into her house and left the door open. And the court noted that Payton was the more recently decided case and it held that under the Fourth Amendment, a firm line is drawn at the entrance of the house. Well, in the absence of exigent circumstances and consent, the threshold cannot be crossed without a warrant. But the court also said in this case that it considered the doorway to be different from the threshold and that no reasonable jury could find that Mr. Bays was in the doorway as opposed to being in his residence. But the court's comment. Why did the court reach that? Was the video important at the trial? Oh, absolutely, Your Honor. Yes. OK. And the video, as, of course, we've watched the video, there was a screen door or some kind of anti-room door. Yes. Right? Yes. And if I remember right, I believe the officer opened that door to get to Mr. Bays. Your Honor, looking at that video. The video is what it is, right? Right. And with respect to that, Your Honor. You couldn't get to him unless you went through that door, could you? That's correct. There was the screen door and then the, I guess, inside door, for lack of a better word. So we're talking about the difference between inside the door and right inside the door. Is that grounds for your argument about that instruction? Well, whether Mr. Bays was standing in that doorway. The videotape shows when Mr. Corder went up, he knocked on the screen door first. And then you could see there's sort of a glass partition in the doorway. You could see Mr. Bays come to the door. Mr. Bays opens the inside door. And at that point, the videotape gets kind of blurry. And the next thing you know, the screen door is open. I don't think it's clear. How are you defining threshold? That's a very good question, Your Honor. Because I think the threshold can be... In my definition of what a threshold is, a threshold would ordinarily be just outside the door. And when you open the door, the person who is inside the door would not be in the threshold, but in the house. Now, so are you defining it differently? Yes, Your Honor. I think a person opens the door, as Mr. Bays did, and they are standing literally in the doorway. That is part of the... Mr. Bays might have been standing... Mr. Corder might have been standing in the doorway. Mr. Bays would have been further in, wouldn't he? Your Honor, I think that's the key to this case. That's a question of fact. That should have been resolved by the jury. Where are we going to draw that Peyton Santana line? Do you believe there's evidence that Mr. Bays was on what I've referred to as the threshold? I think it's arguable based on that videotape. I think a reasonable juror could conclude that he's in the doorway. Actually, your jury was... They were working from that video. So they drew their own conclusions of fact. The instruction said he was inside. That's true. I'm sorry, Judge. Go ahead. So I'm just figuring, where's the... The court decided as a matter of law that he was inside from the video. But it's not a question of a matter of law. It's a matter of fact, a question of... I understand, but your argument has to be that the instruction is... That's an error of law to conclude that it should be instruction... The court jury should be instructed that the officer entered the home. Yes. We submit... Okay. We understand the instruction conformed to Peyton. It gave the jury the Peyton part of warrantless arrest. But we submit that the evidence and the facts of this case also supported the theory that Santana... And you made this same argument to the district court. Yes. Yes, because, as I mentioned earlier, defense counsel tended an instruction that was consistent with Santana. Right, right. I know that. Okay. Counsel, Judge Guy. Yes, Judge. The problem I see in your requested instruction, which was rejected, is that when you ask in the first line or state, rather not ask, but the doorway of one's home is considered a public place, as the discussion you've just had with the other members of the panel indicates, that's ambiguous. Doorway means different things to different people. And if you mean a foot inside the door is the doorway, then that clearly isn't the case. That's inside the house. And as Judge Cook pointed out, the jury was best able to see from the camera footage just where the parties were at all relevant times. So I can't see an error in the court rejecting your proposed instruction. But, Judge Guy, I think you hit the nail on the head. The doorway can be something different to different people. And I think that's a question of fact that the jury should have been allowed to answer, and they could have answered that if the court had given defense counsel's tendered instruction. Normally it's up to the court to define terminology, not the jury. But, Judge, in this case, that line, the Peyton-Santana line, has to be drawn as a matter of fact. Well, if he's inside the house, okay, either one of them is. If Mr. Bays goes inside the house, if Mr. Corder's inside the house, then that is not a public place, right? If they are inside the house, that is correct, Your Honor, under Peyton. But here, even looking at the video, there's a question of fact about whether or not he is inside the house or in the doorway. And I think a reasonable people could— What's your definition of doorway? Judge, it's flexible. I mean, a person can stand in the doorway, even back a little bit from the doorjamb, or stand in front of it. You are still in the doorway. And, again, I think that's a question that the jury has to resolve, where Mr. Bays' location was in terms of Peyton and Santana. In the time that I have, Judge, let me sum up, because I just want to touch briefly on the second issue, and that is instruction number 15, defining willfulness. There's a significant problem with that instruction, because the last sentence of paragraph 1 allows the jury to find that Mr. Corder acted willfully. If he seized Mr. Bays, knowing or recklessly disregarding the possibility that the seizure was constitutionally unreasonable. And what that says and what that does is it allows the jury to convict based on a possibility that Mr. Corder violated the law or violated a specific indefinite constitutional right. Just the possibility. Maybe he violated the law. That's the question that instruction number 15 poses. It allows a conviction just based on the possibility that the law was violated. And that instruction conflicts with the reasonable doubt standard and will leave the government of its burden of proof beyond a reasonable doubt. I see that I'm out of time. If there are any other questions, I'll be glad to answer them. Anything further for Mr. Heff, Judge Gein? Nothing further. Thank you, Your Honor. Good morning, Your Honors. Vikram Swaroop on behalf of the United States. May it please the Court. I'll start with the threshold of the House issue in that instruction. This case is governed by Payton and not Santana for two independent reasons. First, in response to Judge Gibbons' question regarding the definition of what is a doorway, Santana itself defines when somebody is in the doorway and, therefore, in a public place. And the way that Santana defines it is when somebody is subject to public view, speech, hearing, and touch. And here, Bays was not subject to public touch because, as Judge Cook noted, there was a screen door between where Officer Quarter was and where Derrick Bays was. And counsel didn't directly answer your question, Judge Cook, about who opened the screen door because the video is crystal clear. It's not blurry. Officer Quarter opens the screen door. You can see this a few seconds in after he gets to the door. He knocks on the screen door. Bays opens the inside wooden door. Quarter opens the outside screen door and then proceeds into the home. So that's the first reason why Santana doesn't apply here. The second reason Santana doesn't apply here is in this Court's decision in the Sari case, this Court held that Santana doesn't apply when somebody comes to their doorway in response to a knock from a police officer. So a police officer can't deprive somebody of the Fourth Amendment rights that they enjoy in their home by knocking on the door, them coming to their door, and then saying, hey, you don't get any of the rights that were attached to you while you were in your home because you responded to my knock. And here it's undisputed that Bays only came to his doorway in response to Officer Quarter's knock. So for these two independent reasons, the District Court properly held that the case was governed by Payton and not Santana. If the Court doesn't have any specific questions on that issue, I'll turn to the willfulness instruction, which was the other issue that counsel raised this morning. On the willfulness instruction, there are two different arguments that counsel is making on appeal. First, he seems to challenge any invocation of reckless disregard itself in the willfulness instruction. That sort of argument runs headlong into the Screws case from the Supreme Court and the other cases we cite on page 48 of our brief, which hold that willfulness in this statute, in 242, includes acting in reckless disregard of a constitutional right. So the second argument that he has, which is the one that he emphasized this morning, is the language relating to possibility in the last sentence. And his argument seems to be that the jury was allowed to convict based on a mere possibility of a constitutional right. That's simply not the case. To reach that argument, you would need to ignore the rest of the jury instructions. So instruction 9 says that you have to find each element of this offense beyond a reasonable doubt. And one of the elements of this offense defined in instruction 12 is the actus reus, an actual violation of a definite constitutional right. So the jury here had to find separately, beyond a reasonable doubt, that Corder had violated an actual constitutional right. And in this element, the willfulness element defined by instruction 15, just find whether Officer Corder did so willfully. And reckless disregarding a risk or a possibility of a constitutional violation falls within the definition of willfulness, as the cases we cite state, and as the Third and Fourth Circuits have held, and more in Johnstone as well, with upholding the possibility language. And by its very nature, reckless disregard incorporates some uncertainty in the officer's head about the right at issue. Linguistically, reckless disregard as a concept has that gray area. And so including something like risk or possibility was entirely appropriate. And in any event here, there's overwhelming evidence that Officer Corder knew exactly what the rights at issue were. He was trained on three separate occasions, and there was extensive testimony on this. There's testimony from Corder himself that he knew about all of these rights. And there's just overwhelming proof that he knew the rights at issue here. If there are no questions on the willfulness instruction, I'll just note that Corder raises a number of other challenges to his conviction and sentence in his briefs. I'm not planning on addressing those because his counsel didn't focus on those today. If the court has any questions about any of the other issues presented in this case, I'd be more than happy to answer them. If not, I'll rest on the arguments in our brief and ask that this court affirm the judgment and sentence. Judge Guy, you've got anything further? Only more or less a curiosity question. The instruction that the court actually gave, was that taken from another case, or did the judge just prepare it completely? Your Honor, it was taken, the instruction that was given was proposed by the government. So it came from our proposal, and our proposal in turn came from those two cases that I mentioned, Johnstone and Moore from the Third and Fourth Circuit, is where that language, the challenge language in that second sentence comes from. And so we prepared this proposed instruction based on those cases because there was no model instruction in the Sixth Circuit on willfulness on this particular issue. Thank you. Thank you, Your Honor. My question is just curiosity also. How did this incident come to the U.S. Attorney's attention? I don't actually know the answer to that question. Thank you. Mr. Hamm. Your Honor, just to make a couple of points in rebuttal. First of all, the government says that I guess the police can't self-help themselves by knocking and having somebody answer the door. One point is Mr. Bays did not have to answer the door. And the fact that he did put himself, he's in the doorway at that point. And another point that I think is worth making is with regard to the Screws case and reckless disregard, the instruction number 15 talked about conflicting mental states, that one acts willfully or intentionally, voluntarily, and then talks about acting in reckless disregard. You can't act intentionally and recklessly. Those mental states are mutually exclusive and inherently contradictory. And if you look at instruction 15 as a whole, it nullifies all of the other instructions that the court gave. It talks about the possibility that the seizure was constitutionally unreasonable. Even though the other instructions, instruction 12, for example, told the jury that they had to find that Mr. Corder deprived Mr. Bays of a constitutional right. Well, maybe so. But then in instruction 15 it says you can convict if you find that there was a possibility that the seizure was constitutionally unreasonable. So no matter what other instructions were given, the bottom line is the jury could still convict Mr. Corder based on only the possibility that he violated the law. But the jury would have all had to answer the other question first, that he did violate. The first, you said they were asked two questions. The first one seems to undercut your argument about the prejudice that would arise from answering the second, the reckless. You said they had to find that he, first, that he arrested him in violation of his constitutional rights. Or that there's a possibility. I thought the first question was more affirmative. No. The first interrogatory. I think the first one. I'm sorry, go ahead and answer. I might have that wrong. I think instruction 15 specifically said that the conviction could be based on the possibility. Now, the jury was also instructed as to the elements of the constitutional violation and was told that the government had to prove those beyond a reasonable doubt. And when it's discussing the willfulness requirement, the intent requirement, that's one of the elements of the claim. And the jury's not required to find that there's a constitutional violation until it has also found the requisite intent. Or at least not a constitutional violation, but one that violates the statute. They have to find the constitutional, that's one element. They have to find the constitutional violation. But they also have to find that the violation was willful. And that's where the problem arises in instruction 15. Because willful is defined as he acted willfully if he sees Mr. Bays knowing or recklessly disregarding the possibility that the seizure was constitutionally unreasonable. So I think those instructions are inherently contradictory, Your Honor. And we'd ask the court to grant the relief. Anything further, Judge Guy? Nothing further. Thank you all very much. We'll consider the case carefully. The last case is on the briefs, so you can adjourn court.